NO. 07-07-0058-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

SEPTEMBER 24, 2007
_____

JAMES N. MEADOR and MELISSA A. MEADOR,

Appellants

v.

EMC MORTGAGE CORPORATION,

Appellee
_____

FROM THE 169TH DISTRICT COURT OF BELL COUNTY;

NO. 211660-C; HON. GORDON G. ADAMS, PRESIDING
_____

***Opinion***
_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

James N. Meador and Melissa A. Meador (the Meadors) appeal from a summary judgment granted in favor of EMC Mortgage Corporation (EMC) and the denial of their own motion for summary judgment. They had sought a judgment declaring that the principal and interest on an unsecured loan owned by EMC should be forfeited because the loan transaction failed to comply with the homestead lien provisions in the Texas Constitution, TEX. CONST. art. XVI, §50. We affirm the summary judgment.

*Background*

The dispute arises from the Meadors' attempt to acquire an unsecured loan from Conseco Finance Service Corporation. As a condition for the loan, Conseco required that they also refinance their home mortgage. However, it is undisputed that the two loans were independent from one another. That is, two loan applications were completed, and the default on one did not constitute a default on the other. Moreover, the homestead lien arising from the refinancing of the mortgage would not and did not cover repayment of the unsecured consumer loan. The evidence further revealed that once the loans were consummated, the unsecured consumer transaction was acquired by EMC from Conseco.

*Section 50 of article XVI*

Section 50 of article XVI of the Texas Constitution protects a person's homestead from forced sale for the payment of most debts except those enumerated in subsection (a). *Stringer v. Cendant Mortg. Corp.,* 23 S.W.3d 353, 354 (Tex. 2000). While the consumer loan which is the subject of this dispute is not secured by a lien on the Meadors' homestead, they nonetheless rely on subsection (e) to bring it within the scope of §50. The latter provides that:

> A refinance of debt secured by a homestead and described by any subsection under Subsections (a)(1) - (a)(5) that includes the advance of additional funds may not be secured by a valid lien against the homestead unless:
>
> (1) the refinance of the debt is an extension of credit described by Subsection (a)(6) of this section; or
>
> (2) the advance of all the additional funds is for reasonable costs necessary to refinance such debt or for a purpose described by Subsection (a)(2), (a)(3), or (a)(5) of this section.

TEX. CONST. art. XVI, §50(e). According to the Meadors, the consumer loan comprised "the advance of additional funds" under §50(e) even though it was unsecured. Thus, both loans allegedly had to satisfy the requirements of §50 in general. We disagree.

*Interpretation* of *§50*

In construing the constitution, we use the same guidelines used in construing statutes. *Rooms With a View, Inc. v. Private Nat'l Mortg. Ass'n, Inc.,* 7 S.W.3d 840, 844 (Tex. App.–Austin 1999, pet. denied). Those guidelines require us to give effect to the intent of the framers of the constitution by considering the purpose of the provision and the historical context in which it was written. *Ex parte Austin Indep. School Dist.,* 23 S.W.3d 596, 600 (Tex. App.–Austin 2000, pet. ref'd). Finally, we must interpret the words of the constitution as generally understood and rely heavily on the plain language of the literal text. *Spradlin v. Jim Walter Homes, Inc.,* 34 S.W.3d 578, 580 (Tex. 2000).

Here, we are asked to discern what was meant by the phrase "the advance of additional funds." The Meadors opined that it included unsecured loans made in conjunction with refinancing a mortgage on the homestead. In turn, EMC asserted that it only encompasses loans the repayment of which was secured by a lien on the homestead. EMC posits the accurate interpretation.

The plain language of §50(e) talks about the "refinance of debt secured by a homestead and . . . that includes the advance of additional funds . . . ." TEX. CONST. art. XVI, §50(e). The words being so juxtaposed, we cannot but construe the phrase "the advance of additional funds" to be a subset of the overall debt being refinanced and secured. In other words, "additional funds" are monies obtained in excess of the pre-existing debt being refinanced, and when the two are combined, the repayment of the total

3

is to be secured by a lien on the homestead.  This interpretation is not only reasonable and logical but finds support in the history and purpose of art. XVI, §50.  Through the latter, the Texas populace sought means to protect one's homestead against loss due to an inability to pay debt.  Thus, the homestead could be encumbered only for limited purposes.  That historical concept remains the focus of §50, the concept being the regulation and limitation of liens against the homestead.

In this instance,  two separate loan applications were submitted, and two separate loans were made.  Only one loan was secured by a lien on the homestead, however, and that loan was not the one acquired by EMC.  The mere fact that the initial lender required that both be obtained from it does not, as the Meadors contend, render the two loans inseparable.  If that was the case, then both loans would had to have been assigned to EMC, and they were not.[1]  So, we cannot but conclude that the phrase "advance of additional funds" contemplates additional funds the repayment of which is secured through a lien contemplated by art. XVI, §50.

We overrule all of the Meadors' issues since they are dependent upon reading §50 in a manner different than that we adopt and affirm the summary judgment.


Brian Quinn
Chief Justice

---

[1]The situation before us is distinguishable from that in *LaSalle Bank National Association v. White,* 217 S.W.3d 573 (Tex. App.–San Antonio 2006, pet. filed)*,* a case upon which the Meadors  rely.  In *LaSalle*, the parties agreed that the loan was an extension of credit as defined in §50.  We have no such agreement here *viz* the consumer loan that EMC bought.